Robert L. ZOELLER, Plaintiff-Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Appellant.

No. 32198.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1966.

Schwartz & Ely, Robert C. Ely, St. Louis, for appellant.

Gray & Sommers, Don B. Sommers, St. Louis, for respondent.

TOWNSEND, Commissioner.

Action under the Federal Employers' Liability Act on account of injuries sustained by plaintiff in the course of his employment as a switchman-foreman for the defendant. Judgment of $6000 in favor of plaintiff was followed by this appeal.

Plaintiff's testimony shows that at about ten o'clock on the night of Saturday, September 14, 1963 in the course of performing his duties he descended the steep steps of a switch engine to the ground between Track No. 5 and Track No. 4 of the switching tracks in the Carrie Avenue (St. Louis) yards of the defendant. In this area there was no artificial light of any kind. Plaintiff was carrying a lantern which is adapted solely for passing signals; it has no beam and gives a diffused light. In passing down the steps plaintiff had the lantern suspended from his right wrist and held onto the grab iron on the engine with his right hand; in his left hand he held his switching check list. As he stepped off the steps, "I stepped directly onto this pipe that was coming up out of the ground". The pipe in question was eight to ten inches high, coming straight up on the vertical, and then bent over in an L shape with four or five inches on the horizontal. As plaintiff stepped onto the pipe with his left foot, his leg buckled underneath him and he fell, striking his head on some hard object, either the pipe or a rail. For a brief period he was unconscious; when he tried to get to his feet his leg would not bear the weight. Fellow workers put him on the engine which proceeded to the other end of the yard. There ice was applied to his ankle because of the swelling. He could not walk on the foot at all that evening. On the following Monday he went to the hospital where his ankle was X-rayed and treated and he was released. An Ace bandage was placed on plaintiff's leg and he was given the use of crutches for four weeks, after which he walked with a

cane. During most of this period the ankle was swollen and pained the plaintiff a great deal of the time. He was off work for seven weeks. Plaintiff returned to work November 5, 1963 and he guesses that since that time he has missed five or six days because of the accident. Plaintiff's occupation requires him to jump on and off freight cars; when he does not land squarely on his foot it twists and the ankle swells, necessitating hot water treatment at night and propping up of the leg. Such incidents have occurred no more than once a month between November 1963 and January 18, 1965, the date of trial. Changes of weather —dampness, cold temperatures—cause the ankle to ache. Plaintiff noticed no changes in such conditions in the six months preceding trial. For straight walking plaintiff performs as well as before the accident. He participates in swimming and golf as before.

Plaintiff subpoenaed the entire hospital record of plaintiff in the files of Missouri Pacific Hospital; the "X-ray packet" was put into evidence as plaintiff's exhibit No. 1. Counsel read into the record therefrom the interpretation of and commentary on the X-ray picture of plaintiff's left foot, taken on September 16, 1963: "X-ray 121642 of the left ankle shows a small triangular fragment of bone on the posterior aspect of the talus, there being an interval of approximately ⅜₂ between the fragments of the bone and talus, probably an ostri-gonum trigonum possibly secondary to ancient injury. There is irregularity of the articular surface of the tibia due in my opinion to arthritis of the degenerative type. There is a small irregular shadow of increased density adjacent to the lateral aspect of the distal portion of the fibula, apparently a small ex-ostosis. No recent fracture or dislocation is seen. There has been relative little change in the appearance of the bone and joint structures since examination ten years ago. 9–17–63—W. K. Mueller, M. D."

Plaintiff's medical witness, Dr. Harold E. Walters, orthopedic surgeon, testified that plaintiff visited him upon three occasions, namely, December 2, 1963, March 16, 1964, and December 26, 1964. He measured plaintiff's left ankle upon each occasion and at the 1963 date found that the left ankle was three centimeters greater in circumference than the right ankle. Upon the other two occasions mentioned the difference in circumference was one centimeter. At the time of the patient's visit in December 1963, Dr. Walters took two X-rays of the left ankle. He described in detail the conditions disclosed by the picture. He interpreted the plaintiff's condition as being due to avulsion fractures. Subsequently plaintiff's counsel put to the witness the hypothetical question as to whether or not the doctor had an opinion whether the injury was the result of the accident of September 14, 1963. Defence counsel objected to the question on the ground that it assumed a fact not in evidence, namely, that "he was a well and healthy man and had no difficulty with his left ankle prior or on September 14, 1963. He had no disabilities as of that date on that ankle * * *". Upon counsel's assurance that he would furnish the missing evidence the Court permitted the witness to answer. The assumption was then put in slightly different form: "I want you to assume prior to September 14th or, at least, on that date or several months prior thereto, he had no difficulty in that left foot and ankle and he had no pain and discomfort in that ankle. Now, can you answer the question?" The answer was: "My opinion would be—is that there is a direct cause or relation between the accident and the injury." Under similar circumstances the witness was permitted to testify over objection that the injury resulting from the accident was of a permanent nature and that as a result thereof the plaintiff will suffer the discomfort and pain that he described to the doctor. Thereafter defence counsel extracted from the "X-ray packet" (plaintiff's exhibit No. 1) an X-ray of plaintiff's left ankle taken in 1953. Upon cross-examination Dr. Walters, who had had no previous opportunity to view the 1953 X-ray, was

asked after studying that X-ray, "Would that mean, Doctor, if this X-ray showed it in 1953, what you found on your X-rays were conditions which existed before the accident in 1963?" Answer: "I think, that this condition that I mentioned here and the one on the astrangalus certainly existed prior to 1963. They were present in 1953."

The witness also testified that the swelling in plaintiff's ankle as of the time of the last examination in December 1964, was a stationary swelling since it had remained the same from March 1964 to December 1964, and that he "would think" such a swelling was "due to a previous injury, an old injury to the ankle, * * *."

Further cross-examination was as follows:

"Q. * * * Can you say whether the present swelling of one centimeter which has been constant now, your last two examinations, can you say, in your opinion, is a result of the 1963 accident, or the 1953 accident or condition?

A. No, sir. I cannot say what the present day swelling is due to

Q. As to you, what you said concerning the permanency which you find in the man's ankle now, would your testimony be the same that you cannot say whether the permanent condition which you presently find is the result of the 1963 accident or the 1953 condition?

A. No. Taking only the present examination, the last one I made in December of 1964, I could not say what, what the permanency was due to, whether it was due to an accident in December of, or in September of '63, or some previous accident.

Q. And, Doctor, I will ask you as to your opinion that he would have pain in the future, considering now what you know, can you say your opinion that he will have pain in the future is something

that results from a 1963 accident, or is a 1953 condition?

A. The answer would be the same. I could not specify it with the things you mentioned."

Dr. Walters' recantation of his opinion that there was a causal connection between plaintiff's present condition and the accident of September 1963 left the record then devoid of any evidence showing such a relationship. Obviously it left the record barren of any evidence that plaintiff's present condition is a permanent one resulting from that accident; likewise there was no evidence that plaintiff would continue to suffer discomfort and pain as a result of the same accident.

In an attempt to comply with the assurance which plaintiff gave to the Court that evidence of the assumption made in the hypothetical question would be furnished, counsel then recalled the plaintiff to the stand and he testified that for several years prior to September 1963, he had had no disability or pain in his left foot or ankle; that he had had no knowledge of any swelling in his left ankle prior to that month and that there was no difference in the size of his two ankles of which he was aware before September 1963.

No testimony was offered on behalf of defendant.

■ At this point we digress to note that Doctor Walters had previously diagnosed plaintiff's injury as a badly sprained ankle with a tearing of several small chips of bone. He was clearly of opinion that the swollen condition of plaintiff's ankle in December 1963 was due to a recent injury —all which has probative value as to the damages which plaintiff immediately suffered from the September 1963 incident including loss of wages and pain and discomfort. We are therefore of opinion that plaintiff made out an appropriate case for submission to the jury on liability under the Federal Employers' Liability Act and for

damages sustained up to December 1964, when, in the witness' opinion, the swelling of the ankle had become stationary, or up to the time of trial.

■ Instruction No. 4 told the jury that if it found the issues in favor of plaintiff, "then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future, as a direct result of the occasion mentioned in the evidence." This is MAI 4.01. In the approved form, the words "and is reasonably certain to sustain in the future" are placed in brackets with the appended footnote, "This may be added if supported by the evidence." Defendant charges error in the inclusion in the instruction of the element of future damages. Would the evidence herein support a conclusion that the plaintiff is reasonably certain to suffer pain and weakness in the ankle *in the future*? Does the fact that such weakness and pain existed at the time of trial make it reasonably certain that it will persist in the future and that, if it does, *it is reasonably certain that such condition flows directly from the accident of September 1963*? We review again the following evidence: Plaintiff's own medical witness testified that, as disclosed by the relative X-rays, the physical structure of plaintiff's ankle was the same in December 1963 as in 1953. To this must be added the interpretation of the physician who examined the September 1963 X-ray at Missouri Pacific Hospital: "No recent fracture or dislocation is seen. There has been relative little change in the appearance of the bone and joint structures since examination ten years ago." As to an apparent ex-ostosis shown on the September 1963 film, Doctor Walters stated: "The exostosis that you are referring to there * * * I did see on the film that you mentioned,

and I feel did predate any accident or injury that took place in December whenever—in September of '63." Q: "And that's the one you looked at was for 1960; that would have been about three years before. Is that right?" A: "It was present on the *1960* film, yes, sir."

Doctor Walters ultimately stated that he could not state whether the present stationary swelling of the ankle was due to the 1963 accident or to the 1953 condition, although he had previously expressed the opinion that such a swelling was "due to a previous injury, an old injury to the ankle." *

When Doctor Walters examined the plaintiff in December 1964, the latter then complained of pain, discomfort and weakness in the ankle—all conditions about which plaintiff himself testified. Despite this knowledge and that derived from his personal examination of the plaintiff, Doctor Walters was unable to ascribe such conditions to the accident of September 1963. He could not attribute plaintiff's permanent condition or the possibility of future pain to the accident.

Plaintiff's situation is characterized by extreme uncertainty as to the course of future events. The uncertainty of his whole situation is further compounded by the fact that, if the uncertain possibilities of pain and weakness were to eventuate, still in order for them to be compensable it would be necessary to show by evidence having probative value that such conditions flowed from the 1963 accident. And that evidence is lacking. If plaintiff's own expert medical witness could not be of opinion that future pain and weakness which plaintiff may have will result from the 1963 accident a jury could not be expected to make a sound forecast of that issue. In this state of the evidence any consideration of future damages would plainly project

---

\* It may be noted that the "evidence" of swelling as of December 1964 consisted entirely of measurements showing that the circumference of the left ankle was one centimeter ($39/100$ of an inch) greater than that of the right. Is this evidence of swelling?

one into the realm of imagination, speculation and conjecture.

██ The requirement of reasonable certainty is not satisfied by a mere showing of likelihood. The evidence must show more than a possibility. Allen v. St. Louis & S. F. R. Co., 184 Mo.App. 492, 170 S.W. 455. And probability alone will not suffice. Schwend v. St. Louis Transit Co., 105 Mo.App. 534, 80 S.W. 40; Allen v. St. Louis & S. F. R. Co., supra. "Consequences which are contingent, speculative, or merely possible are not to be considered. To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury." Clark v. Mississippi River & B. T. Ry., 324 Mo. 406, 23 S.W.2d 174, 179. We regard as sound the proposition enunciated in Lucas v. State Farm Mutual Auto Insurance Company, 17 Wis.2d 568, 117 N. W.2d 660, cert. denied, 373 U.S. 922, 83 S.Ct. 1522, 10 L.Ed.2d 423, that before a recovery may be allowed for future pain and suffering there should be competent medical findings and the unsupported subjective statements of the injured party are not sufficient.

We are of opinion that it was error to submit that portion of Instruction No. 4 relating to damages to be sustained in the future.

██ Defendant maintains also that following Doctor Walters' recantation of his opinion that the 1963 accident resulted in a permanent injury, there was no longer any probative evidence of such a resultant permanent injury. We agree. Nevertheless in closing argument plaintiff's counsel upon three separate occasions emphasized the permanent character of the injury resulting from the accident. Upon each occasion defence counsel objected and was overruled by the Court; upon the last occasion the Court said: "The jury will have to base their verdict on what they heard, not on what I tell them it was. I don't do that. Go ahead." The objection was directed to the Court and by the Court's refusal to consider the validity of the same it abdicated a part of the judicial function. The net result was that the Court allowed counsel to ignore the elementary principle that argument should not go outside the limits of the record. Any reference to the permanent condition of plaintiff's ankle was relevant only if that permanent condition could be attributed to the accident of September 1963; after Doctor Walters had recanted his earlier testimony there was no evidence that that permanent condition had any relationship to such accident. Consequently any reference to "an injury he is going to live with the rest of his life" could be proper only if the evidence had shown that that injury flowed from the incident of September 1963. Upon objection the jury should have been admonished to disregard such reference by counsel and upon a repetition of such argument, objected to, counsel himself should have been admonished. The emphasis placed upon the permanent condition of the ankle (including a reference to "this permanent swelling") was unjustified and made such argument prejudicial to defendant and objection thereto should have been sustained.

For the reasons stated, the judgment is reversed and the cause remanded for trial on the issue of damages only.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the cause remanded for trial on the issue of damages only.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.