**Ed W. FOLTZ, Plaintiff-Respondent,**

**v.**

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant-Appellant.**

**No. WD 35095.**

Missouri Court of Appeals, Western District.

Feb. 19, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

Application to Transfer Denied May 29, 1985.

Spencer J. Brown, Deacy & Deacy, Kansas City, for defendant-appellant.

Jo B. Gardner, Jo B. Gardner, Inc., Monett, for plaintiff-respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

Defendant, Burlington Northern Railroad Company, appeals from a verdict and judgment under the Federal Employers' Liability Act in favor of plaintiff Ed Foltz for damages suffered as a result of defendant's negligence. Burlington Northern claims the trial court erred in instructing the jury, that the evidence was insufficient to support submission of the case to the jury, and that the verdict is excessive. We affirm.

Mr. Foltz is a railroad employee of the defendant working as a switchman in a railyard in Kansas City. Mr. Foltz along with four other crew members was responsible for switching tracks in the yard. At the time of trial, he was fifty-four years old and had been railroading since he was eighteen years old. The plaintiff has an eighth grade education and has no other skills beside his railroad training. His approximate yearly wages are $47,000.

Between May of 1978 and June of 1981 Mr. Foltz suffered a series of four injuries in the course of his employment for which he filed suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. 51, et seq.

In April of 1983, the case was tried to a jury which returned a verdict in favor of defendant on plaintiff's first, second, and fourth causes of action, and a verdict in favor of plaintiff on his third cause of action awarding him $190,000, and judgment was entered accordingly. The trial court denied defendant's motion for judgment notwithstanding the verdict and in the alternative a new trial.

Although plaintiff has not appealed from the three verdicts in favor of defendant, we set out the facts concerning all four of the injuries because they form part of the factual basis for the legal issues presented by this appeal.

The three occurrences about which the jury found in favor of defendant took place on May 24, 1978, September 25, 1978, and June 1, 1981, and all involved similar facts. In each of those incidents, plaintiff stepped from the cab of a train or a train car onto uneven ground or into a hole, injuring his foot, leg, hips and back.

The jury found in favor of plaintiff on his third cause of action which stemmed from an injury that occurred on August 19, 1979. On that date, plaintiff manually threw a switch to realign tracks in the yard. To throw the switch he first had to push it to a vertical position and then compress it all the way down to complete the operation. At trial, plaintiff testified that the switch was difficult to throw and that as he was pulling it down he experienced sharp pains in his lower back and hips.

Plaintiff also testified that he had reported this difficulty with the switch to his crew foreman five days before the August 19 injury. That testimony was not contradicted. Plaintiff's witness, Reyburn Jones, testified that he had operated the switch before plaintiff's injury and that it had been difficult to throw. He further testified that he had reported the condition to the foreman, but he could not say for how long the switch had been in that condition or when he had made the report. After the incident, the difficulty was again reported, and a witness for defendant, a section foreman, testified that he inspected the switch in response to the report in August of 1979

and found it difficult to throw, but he found no mechanical defect.

Both parties presented medical evidence concerning the plaintiff's injuries allegedly caused by defendant's negligence. The plaintiff had suffered injuries to his back in 1951, 1955, and 1966, but the evidence conflicted as to whether those injuries had completely healed by May of 1978.

Plaintiff presented the testimony of two physicians who had examined him, the first being Dr. Arnold Schoolman, a neurosurgeon. He testified that plaintiff was suffering osteophytes, also known as degenerative arthritis, basically a condition of bone spurs in the spine which narrow the spinal passage opening causing back pains. Counsel asked the doctor the hypothetical question whether the plaintiff's throwing of the switch could have caused plaintiff's back condition. He answered, "Well, certainly anything that is trauma to this patient could have been a contributory cause, and if what you say he did, he did, it could have contributed to his back pain." Also in response to hypothetical questions positing the facts of the other three injuries, the doctor testified that they too could have contributed to plaintiff's back condition. He was troubled by the other injuries and could not say whether one of the injuries alone caused the condition.

Plaintiff's attorney next asked Dr. Schoolman whether, based on the fact that Mr. Foltz had complained of the back pain since the first occurrence in 1978, he had an opinion as to the permanency of the condition. He responded, "Certainly the longer the duration of the pain, the more likely it is that he is going to be troubled with it in the future." He said that this was not equivalent to permanence but that the longer the pain had existed in the past, the longer it would continue in the future. On cross-examination, the doctor testified that he was unaware of plaintiff's pre-1978 injuries and that they could have contributed to the back condition if they were not healed by the time of the first injury.

Plaintiff next called a second examining physician, Dr. Meyers, a family practitioner who had some training in orthopedics. His examination also revealed evidence of osteophyte formation in Mr. Foltz' spinal column. In response to a hypothetical question about plaintiff's August 19 throwing of the switch, he stated that as a result plaintiff would have sustained substantial trauma to his lower back. Similarly, he testified that the other three injuries sued upon could have contributed to the back condition. He could not pinpoint any one of the injuries as the sole cause, but stated that any trauma to the back could force the spurs to move, causing pain. He also testified that without surgery plaintiff would suffer continuous and increasing pain of an undeterminable degree and that the condition would cause considerable pain when plaintiff performed manual labor and could eventually prevent him from doing all manual labor.

On cross-examination, Dr. Meyers testified that he was unaware of the plaintiff's pre-1978 injuries, but that if they had not healed by the time of the first occurrence the condition would already have become chronic. On redirect, the doctor read from a 1966 hospital report concerning plaintiff's 1966 injury which stated that the earlier injuries were completely healed.

Mr. Foltz also testified as to his injuries and the pain that he was suffering. He stated that he was in constant pain and that he was unable to get a full, uninterrupted night's sleep. Because of the pain he could not ride in an automobile for long distances, he had trouble sitting, and at times he was unable to disrobe. The pain persisted in varying degrees while he worked, and it interfered with his leisure time activities of hunting, fishing and gardening. His condition aggravated him and made him irritable with his friends and family. He did not testify that his pain was the result of only the August 19 injury. Finally, he testified that he had lost $1,900 in wages because of the August 19 occurrence.

The defendant called an orthopedic surgeon, Dr. John Barnard, who had examined the plaintiff after this action began. He

said that plaintiff had an osteophyte condition and that the condition could result from ordinary wear and tear, strenuous manual labor, or could be caused by trauma. As far as he could tell, the condition was brought on by more than one trauma to plaintiff's back. On cross-examination, he testified that any of the traumas involved in this case could have contributed to the condition.

All of the medical witnesses agreed that plaintiff has an osteophyte condition in his spinal column and that any of the four injuries sued upon here could have caused or contributed to Mr. Foltz' back problem. None of them was able to say that the August 19 injury was the sole cause of the problem. They all agreed that the bone spurs would cause pain. The doctors who testified for plaintiff stated that the pain would continue in the future but would not say that it was permanent.

At both the close of plaintiff's evidence and the close of all the evidence, defendant moved for a directed verdict. Both motions were denied. The jury returned its verdicts, awarding plaintiff $190,000 on his third cause of action, and judgment was entered. Defendant filed a motion for judgment notwithstanding the verdict or in the alternative a new trial, which was denied.

Defendant raises four points on appeal: *First*, that jury instruction No. 17, based on M.A.I. Third 24.01, was erroneous because it did not include an additional instruction on foreseeability as recommended by the notes on use, M.A.I. Third 24.01. *Second*, that jury instruction No. 19, based on M.A.I. Third 4.01, included an instruction for future pain and suffering which was not supported by sufficient evidence. *Third*, that the verdict was grossly excessive, requiring a new trial or remittitur, and, *fourth*, that the trial court erred in not granting defendant's motions for a directed verdict and judgment notwithstanding the verdict because plaintiff had not presented a submissible case.

■ Two of defendant's points require a review of the jury instructions given in the case. Rule 70.02(c) sets forth the effect of error in instructing the jury: "The giving of an instruction in violation of the provisions of this rule shall constitute error, its prejudicial effect to be judicially determined." Ordinarily, deviation from the requirements of M.A.I. is not approved, but a deviation may not be prejudicial. *Burrell v. Mayfair-Lennox Hotels, Inc.*, 442 S.W.2d 47, 54 (Mo.1969). Here we find no deviation from the requirements of M.A.I. in the instructions submitted.

I.

Defendant's first point concerns instruction No. 19 which was based upon M.A.I. 24.01, a verdict directing instruction in FELA cases. The judge instructed the jury as follows:

Your verdict must be for plaintiff if you believe:

First, August 19, 1979, defendant failed to provide reasonably safe conditions for work, or reasonably safe appliances, and

Second, defendant in any one or more of the respects submitted in Paragraph First was negligent, and

Third, such negligence resulted in whole or in part in injury to plaintiff.

The defendant's complaint is that the judge did not include the following additional paragraph provided for in the Notes on Use, M.A.I. Third 24.01 (1981 revision): "defendant knew or by using ordinary care should have known of such condition, and that such condition was reasonably likely to cause substantial harm." The notes explain that the additional paragraph should be given when plaintiff submits some act of negligence, constructive knowledge of which is not chargeable to the defendant railroad. Defendant asserts that plaintiff did not present sufficient evidence to justify the judge's conclusion that the railroad was chargeable with constructive knowledge of the condition of the switch, thus the additional instruction was required. Plaintiff counters that defendant had actu-

al knowledge of the state of the switch and the omission was not in error.

The resolution of this point depends upon whether a defendant railroad can be charged with constructive knowledge of a negligently produced condition. Implicit in the notes on use explanation as to when the additional instruction is required is the idea that the judge must decide whether the plaintiff has presented sufficient evidence to justify not submitting the issue to the jury. Obviously, if the judge decides that plaintiff has shown defendant had actual knowledge, the instruction is not required.

■ Defendant relies principally upon *White v. St. Louis San Francisco Ry. Co.,* 539 S.W.2d 565 (Mo.App.1976), as authority for its argument. In *White,* the court in dictum stated that, unless plaintiff shows that the condition or defendant's action violated a safety rule, the additional instruction must be given. In the case at bar, plaintiff did not show that the condition of the switch violated a railroad safety rule. The mere violation of the safety rule charges the defendant with constructive knowledge.

The *White* decision relies upon two Missouri Supreme Court decisions for the dictum mentioned above. Both of the cases concerned alleged errors in pre-M.A.I. instructions. In *Adams v. Atchison, Topeka and Sante Fe Railway Co.,* 280 S.W.2d 84, 92 (Mo.1955), the court held that, where violation of a safety rule is shown, the evidence need not show that plaintiff's injury could have been reasonably anticipated. In the second case, *Hughes v. Terminal R. Ass'n of St. Louis,* 265 S.W.2d 273, 280 (Mo.1954) (en banc), the court held that, where no violation of a safety rule or custom was shown, a court could not hold as a matter of law that defendant had the duty alleged by the plaintiff and the issue was for the jury. Neither of the cases construed the notes-on-use provision in question here. The *White* decision only stands for the proposition that, if plaintiff shows a violation of a safety rule, then the additional instruction is not required. In light of *Wilmoth v. Chicago R.I. & P.R. Co.,* 486

S.W.2d 631, 639 (Mo.1972), the *White* case does not dictate that plaintiff must show a violation of such a rule to justify omitting the notes-on-use addition.

The *Wilmoth* case did involve the use of M.A.I. 24.01 without the additional instruction in a FELA case; the court held that the omission was not error. *Wilmoth* was a wrongful death action where plaintiff alleged defendant was negligent in not providing the decedent with adequate help in performing his job as station master. The decedent died of a heart attack while unloading mail from a train by himself. The defendant had actual knowledge of the understaffing because the decedent had worked at the same station for sixteen years and during that time the defendant had reduced the staff from five to two even though the amount of work at the station had not decreased. The defendant's own doctors had diagnosed the heart condition which eventually caused decedent's death. The defendant had also changed the lunch hour of the decedent's only helper so that he was at lunch upon the arrival of the train that decedent was unloading when he suffered a heart attack and died.

■ The supreme court simply stated that defendant had constructive knowledge of the understaffing and decedent's heart condition so that the additional instruction was not necessary. No showing was made in *Wilmoth* that a safety rule had been violated. On the facts in *Wilmoth,* defendant had not only constructive knowledge but actual knowledge of an unreasonably dangerous condition. Where the defendant has such actual knowledge, the additional instruction is unnecessary even without showing a safety rule violation. *Id.* *Wilmoth* is also authority for the principle that where substantial evidence is presented that defendant had constructive knowledge of a negligently existing condition, the additional paragraph can be omitted, even without a showing of safety rule violation. *Id.*

■ We find in this case that the evidence was sufficient to show that defend-

716

ant had actual notice of the condition or that at the very least the evidence was substantial enough to show constructive knowledge. The plaintiff testified that he had reported the condition of the switch to his foreman five days before the injury. Another witness also testified that the switch was hard to throw before the accident and that he reported it to his foreman, although he was unable to state for how long the condition existed or when he reported it. The switch was inspected right after the accident, and the inspecting foreman testified it was hard to throw. Knowledge of a defendant's employee is usually knowledge of the defendant. *Wiser v. Missouri Pacific R.R. Co.*, 301 S.W.2d 37, 41 (Mo.1957). The uncontradicted evidence was that the difficulty with the switch had been reported to supervisory personnel of defendant prior to August 19, 1979, therefore, the trial judge committed no error in not including the additional provision in his instructions.

II.

The railroad next asserts that the court erred in its instruction No. 19 which was derived from M.A.I. Third 4.01. The judge instructed the jury as follows:

> If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a result of throwing a switch August 19, 1979 mentioned in the evidence. Any award you make is not subject to income tax.

Defendant asserts that the court erred in including the bracketed segment in its instruction. The notes on use on this point provide that the segment at issue should be added if supported by the evidence. The railroad argues that the evidence was not sufficient to support a submission for future damages since the consequences of an injury must be shown with reasonable certainty before the issue can be submitted to

the jury. *Zoeller v. Terminal R.R. Ass'n of St. Louis*, 407 S.W.2d 73 (Mo.App.1966).

■ In essence, defendant contends that plaintiff did not show with reasonable certainty that any possible future damages suffered by Mr. Foltz would result from the August 19th injury. Substantial evidence was adduced to show with reasonable certainty that Mr. Foltz will experience pain and suffering in the future, but the issue here is whether sufficient evidence was presented to attribute that future damage to the cause of action for which Mr. Foltz recovered. The answer depends upon how much evidence is required before an issue of future pain and suffering can be submitted to the jury in a FELA case. Our decision here is controlled by the fact that this is a FELA case, and the strong preference in such a case is for the jury to determine all factual issues where the jury can reasonably draw the particular inference or conclusion submitted to it. *Sentilles v. Inter-Caribbean Shipping Corp.*, 361 U.S. 107, 110, 80 S.Ct. 173, 175, 4 L.Ed.2d 142 (1959); *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

At trial, plaintiff presented ample evidence that he has a back condition that was at least in part caused or aggravated by the four injuries for which he sought recovery. Also, ample evidence was adduced that the condition would persist for some time in the future. The problem for the plaintiff stems from the fact that he had four injuries which could have caused or contributed to his back problem, he recovered on only one, and none of the evidence attributed his problem solely to that particular occurrence. In addition, conflicting evidence indicated that plaintiff's problem existed even before the first of the four injuries.

■ In FELA cases, decisions of the United States Supreme Court are controlling when applicable to an issue. *See* e.g. *Wehrli v. Wabash R.R. Co.*, 315 S.W.2d 765, 769 (Mo.1958). The Supreme Court's decision in *Sentilles v. Inter-Caribbean Shipping Corp.*, 361 U.S. 107, 80 S.Ct. 173,

4 L.Ed.2d 142 (1959), applies directly to the facts of this case and determines our decision.

■ *Sentilles* concerned a negligence action brought by a seaman under the Jones Act, 46 U.S.C. § 688. The Jones Act by its terms, and as construed by a line of Supreme Court decisions, incorporates the rights and liabilities found in FELA. 46 U.S.C. § 688; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Kernan v. American Dredging Co.*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958); *Cox v. Roth*, 348 U.S. 207, 209, 75 S.Ct. 242, 243, 99 L.Ed. 260 (1955). Therefore, cases construing either act are authority for the construction of the corresponding act. *Greenhaw v. Pacific-Atlantic S.S. Co.*, 190 Or. 182, 224 P.2d 918, 922 (1950); *See Cox v. Roth, supra; Kernan v. American Dredging Co., supra; Mitchell v. Trawler Racer, Inc., supra.*

■ In *Sentilles*, the plaintiff sued for the aggravation of a latent tubercular condition which he alleged was caused by a fall incurred during his employment. A doctor who testified for the plaintiff stated that an acute dissemination of tuberculosis *"might"* be a consequence of the fall. *Id.* 80 S.Ct. at 175. Two other expert witnesses for the plaintiff testified that the accident most likely or probably aggravated the condition. The Court reversed the circuit court's decision that the evidence was not sufficient to support a jury verdict in favor of plaintiff. The Court held as follows (and we feel it important to quote this part of the decision at length):

> The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation. They were entitled to take all the circumstances, including the medical testimony into consideration. Though this case involves a medical issue, it is no exception to the admonition that, "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. * * * The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * " (Footnotes and citations omitted.)

In our case, without doubt, plaintiff has a back problem and ample evidence supports a finding that the incident of August 19 aggravated that condition. In *Sentilles*, the plaintiff's condition was already extant and evidence of the aggravation of that condition was sufficient to make a jury question on causation. The amount awarded by the jury was substantially less than the amount of plaintiff's prayer. The jury could have reasonably drawn the conclusion that $190,000 represented the amount of future pain and suffering due to the particular occurrence for which plaintiff won a verdict. Also evidence was introduced to show that the plaintiff may not be able to do manual labor if the pain continues. Therefore, following *Sentilles*, we conclude that the evidence was sufficient to submit the issue to the jury.

■ Defendant also argues that the jury's verdict on this issue was the result of conjecture and speculation. As explained in *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), a degree of conjecture and speculation in a

718

jury's decision in a FELA case is not fatal. The court there said:

It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.

Two Missouri cases lend general support for our decision in this case. The injury need not be shown to be permanent to justify the instruction. *Chaussard v. Kansas City Southern R. Co.,* 536 S.W.2d 822, 828 (Mo.App.1976). Evidence of the long continuance of conditions existing at trial is sufficient to justify the instruction, and the evidence may come solely from the plaintiff with medical corroboration. *Jones v. Allen,* 473 S.W.2d 763, 766 (Mo.App.1971). To the extent that the decision in *Zoeller v. Terminal Railroad Ass'n of St. Louis,* 407 S.W.2d 73, 77 (Mo.App. 1966), seems to require a different result, we note that in the *Zoeller* opinion no mention is made of a controlling United States Supreme Court case. For that reason we find that *Zoeller* does not control in this particular fact situation.

### III.

The railroad's next point on appeal is that the trial court erred in not granting its motion for a new trial or a remittitur on the ground that the verdict was excessive, and not supported by the evidence. Defendant points out that plaintiff only lost $1,900 in wages as a result of the August 19 occurrence, and all medical expenses were paid by insurance.

First, we note that a distinction is apparent between a verdict which is merely excessive and one so grossly excessive as to indicate jury bias and prejudice in the award. *Skadal v. Brown,* 351 S.W.2d 684, 689–90 (Mo.1961). Where the verdict is merely excessive, indicating an honest mistake by the jury in weighing the evidence in reference to the nature and extent of the injury, it can be corrected by remittitur without a new trial. *Id.* Where the verdict is so excessive as to indicate bias and prejudice, however, the entire verdict is invalidated "not only as to the amount of the award, but also as to the determination of liability, and cannot properly be corrected by a remittitur . . ., but requires that the verdict in entirety be set aside" and a new trial be granted. *Id.* at 690. The mere size of the verdict alone is not enough to show bias and prejudice; some error committed during the course of the trial, revealed by the record, must point to jury bias and prejudice. *Id.* Defendant points to no such error in the record, and relies only upon the size of the verdict for its argument; our reading of the record does not reveal this type of error. Therefore, a new trial on this point is not warranted.

The appropriate remedy for a merely excessive verdict is to grant a remittitur. *Id.* In a recent case, the Missouri Supreme Court in discussing remittitur said:

The day is past when this Court and the courts of appeals engage in close scrutiny of the amounts awarded by juries for personal injuries. We rely on the trial judge. Judge Tillman called for briefing on the amounts awarded in comparable cases, and then allowed the verdict to stand. We do not believe that we should supersede his judgment. We do not disclaim our authority, or that of the courts of appeals, to give attention to the size of verdicts, or to order remittiturs if persuaded that there had been a clear abuse of discretion. There may be cases in which the award is so far out of line, when compared to the tangible damages shown, that the appellate court would be impelled to take corrective action. This case is not one of them. (Footnote omitted.)

*Fowler v. Park Corp.*, 673 S.W.2d 749, 758 (Mo.1984) (en banc).

 In this case, we cannot say that the award is so far out of line with the tangible damages shown to require corrective action. Mr. Foltz testified to the continuing pain that he is suffering. He stated that it adversely affects his work, his ability to sleep, to even sit up, and at times prevents him from undressing. He also testified that the pain prevents or interrupts his enjoyment of his leisure time activities. Medical testimony was received that the pain will continue in the future and that it may eventually prevent him from doing all manual labor. If Mr. Foltz is eventually unable to do any manual labor, he seems to have no other employment possibilities or skills. We have already held that the jury's award of damages for future pain and suffering in this case was not unreasonable. In light of the evidence, we do not believe that the award is so out of line that we should supercede Judge Mauer's judgment.

### IV.

 The railroad raises one final point: that the trial court was incorrect in overruling its motions for a directed verdict and judgment notwithstanding the verdict because there was not sufficient evidence to submit the case to the jury. It cites no authority for this point and does not even make the effort to brief an argument. This is certainly not a case where authority or argument is not appropriate, and we find that this point is abandoned. *Thummel v. King*, 570 S.W.2d 679 (Mo.1978) (en banc). In addition, we find no merit to defendant's point in light of the amount of evidence required to support submission of an issue to the jury in a FELA case. *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

For the foregoing reasons, we affirm the judgment.

All concur.