Russell PARR, Plaintiff-Respondent,

v.

MISSOURI FARMERS ASSOCIATION, INC., Defendant-Appellant.

No. KCD 29322.

Missouri Court of Appeals, Kansas City District.

June 12, 1978.

Erwin L. Milne, Terry M. Evans (Stockard, Andereck, Hauck, Sharp & Evans), Trenton, for defendant-appellant.

R. Max Humphreys (Miller, Humphreys & Seidel), Trenton, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and WASSERSTROM, JJ.

DIXON, Judge.

The defendant, Missouri Farmers Association, appeals a jury verdict in favor of the plaintiff in the amount of $6,116.29. Plaintiff's suit was bottomed on a claim that approximately one thousand bushels of soybeans owned by Parr, the plaintiff, were delivered and stored by the defendant and sold by the defendant on July 13, 1976, at a market price of $6.62 a bushel.

The essential dispute between the parties is the date of sale, MFA contending the sale took place on May 6 when the market was $4.52 per bushel.

MFA, on this appeal, raises an issue with respect to the introduction of a letter in evidence and attacks three instructions.

Russell Parr had grown the soybeans in question on a farm which he previously owned. Prior to the growing season, Parr had sold the farm but agreed to take the crop as part of the down payment. The new owner of the farm, one Fowler, was indebted to the MFA, and MFA was concerned that the account be paid by way of a setoff against the proceeds of the soybeans if they were Fowler's property. Fowler did not claim ownership of the beans, but the costs for planting had been paid by Fowler and the sharecropper who delivered the beans to MFA storage was at that time in the employ of Fowler, although he had also been Parr's tenant. The soybeans were delivered to the elevator for storage in the names of the tenant and Parr and the tenant's share of the beans is not in dispute in this suit. Parr said that he heard that the beans were being held subject to Fowler's debt and, on May 6, went to the MFA Exchange. He intended to sell his beans to avoid any difficulty with respect to Fowler's debt. An employee of MFA testified that Parr informed him he wanted the beans sold and the employee entered the sale order on the MFA books. Parr denied ordering the sale.

The testimony with respect to the practices concerning the sale of beans was fairly explicit. The Spickard MFA Exchange maintained a daily price at which they would buy soybeans and, likewise, a daily price at which they would sell soybeans, the sales price being always slightly higher than the purchase price. Thus, the MFA had a continuing offer to buy at a daily price which fluctuated and, likewise, had a continuing offer to sell at a daily price, which similarly fluctuated. It was clear that a customer who asked to sell beans would get the price established by MFA for a purchase by MFA on the day the sale was requested, regardless of whether the beans were resold by MFA the same day or held for later sale. MFA by this means established a local market price for soybeans. It was the custom and practice to deliver a check or notify the customer in person of the price of the sale, if subject to setoff, and the balance as between MFA and the customer at the time of the transaction. Parr never received any type of notice of the transaction, and MFA did not pay him for the beans.

On May 7, Parr returned to the MFA and talked to the manager. The manager said that Parr asked for a check, but the manager refused it because he thought that MFA had a claim against the beans because of Fowler's debt. Parr's claim is that the only inquiry he made was whether Fowler's bill would be held against his beans and that he received an affirmative reply from the exchange. At some time in June, Parr called MFA; and MFA flatly refused to pay for his beans without deduction for the Fowler debt. Parr's lawyer wrote MFA in June demanding either the soybeans or the proceeds of sale. That letter was by regis-

tered mail, and the signature of the manager of MFA appeared on the receipt. A letter was introduced into evidence and was identified by a lawyer for Fowler as having been received by him from Stephen T. Faries, an attorney for MFA. It was admitted that Faries was acting for MFA in connection with the dispute. This letter recited, under date of July 7, 1976, "The Spickard MFA Exchange still has 942.63 bushels of beans in storage in the name of Russel [sic] Parr" and then inquired as to whether Fowler claimed any interest in the beans. The letter then continues that if Fowler does not claim an interest the lawyer would advise MFA to pay Parr the value of the beans in storage. On July 13, Parr claims that MFA called and announced a willingness to pay on that day's market and when he went to the exchange he refused to accept the check as offered in the amount of $4,137.50, the May 6 price for beans, because he understood he was to receive the July 13 price which, with proper storage charges deducted, would produce approximately $6,000.

■ The appellant's first point is that the letter from the lawyer Faries was erroneously admitted because it was hearsay and not within an exception to the hearsay rule. At the time the objection was made that it was hearsay, Parr's attorney suggested that the letter was an exception as it constituted an admission by an agent of the defendant. There was some discussion between the court and counsel as to whether the letter constituted an admission or a declaration against interest; but, if it was admissible as an admission, no further inquiry need be made. Admissions of an attorney relevant to the purpose for which he was employed and made while engaged in that employment are admissible in evidence against the employer and client. *Gibson v. Metropolitan Life Ins. Co.*, 147 S.W.2d 193 (Mo.App. 1941).

■ The employees of MFA who testified at trial admitted that Faries represented MFA with regard to the specific legal dispute, and the statements made by Mr. Faries were certainly relevant to the purpose of his employment. MFA also argues that the letter was not properly admitted because there was no testimony as to its authenticity. Contrary to Rule 84.04(d), this claim was not included in MFA's point, the point being directed solely to the hearsay nature of the letter. In any event, that objection was not offered at trial and comes too late in the proceedings to be of any avail.

■ MFA's second point is divided into three subpoints, each of which attack some aspect of the instructions given to the jury. They need be considered separately because of the nature of the claims made. The first attack is upon the plaintiff's verdict-directing instruction. MFA contends that a disputed issue, the date of sale, was not included as a finding in the instruction. If there had been a dispute as to whether the beans had, in fact, been sold, MFA's point would have more merit. It should be noted that MFA conceded that the beans were sold and, in fact, entered a formal tender of judgment under Rule 77.24 for the amount of the sale price assuming a sale date of May 6. The real issue as to the date of sale is one affecting damages and not liability. The verdict, of necessity, must have been for the plaintiff. The only real dispute was how much the plaintiff was entitled to receive. The date of sale and price were presented in other instructions to be later discussed, and no prejudice occurred to MFA by the omission of this element from the verdict director. Axiomatic is the reading of all instructions together; and, when that is done, all of the elements of the plaintiff's right to recover and the amount thereof were presented for a jury determination. *Kelso v. C. B. K. Agronomics, Inc.*, 510 S.W.2d 709 (Mo.App.1974).

■ MFA attacks the damage instruction given in the case which is a modification of MAI 4.04, although the modification is so great that any resemblance to MAI 4.04 is lost. Before undertaking to discuss the position of MFA with respect to this instruction, it will be well to advert to the claim of MFA that the element of the date of sale was not included in the verdict directing

instruction. The damage instruction in the form in which it was given, which is far from a model, first required the jury to find the issues for the plaintiff. That was a conceded fact in the case and could not have been prejudicial regardless of the manner in which it was tendered to the jury. The instruction then required the jury to find the fair market value on the date the *defendant* agreed to *sell* the soybeans less the agreed storage charges and interest from the date of demand until August 9. It is puzzling as to why the instruction required a finding as to the defendant's agreement as the critical fact. The critical fact was the date upon which the plaintiff ordered the sale. The instruction was either erroneous in using the word "sell" or the word "defendant." But even if this was error, it was error in favor of MFA because it would have permitted the jury to find the issues for MFA on an erroneous theory not justified by the evidence.

■ The more difficult question is that the instruction as written conflicts with the verdict directing instruction. The verdict directing instruction referred to the MFA's agreement to purchase; and the damage instruction, because of the misstatement, referred to the date the MFA agreed to sell. There can be no dispute that the two instructions conflict. Ordinarily, the issue to be decided where instructions conflict is whether the jury is misled by the conflict and reaches an erroneous verdict. In this case, only two verdicts were possible for the jury to reach under the evidence, one was a verdict in accordance with MFA's tender assuming the jury believed the MFA's testimony as to the date upon which the beans were sold. The other permissible verdict under the evidence was a verdict based on the evidence of Parr that he directed the sale of the beans on July 13. The conflict, if it had confused the jury, would have led to an entirely different verdict not supported by any evidence in the case. It is, therefore, apparent that the jury was not misled by the conflict between the instructions but understood from all the instructions the essential issue in the case.

■ The defendant in argument also asserts that the damage instruction is erroneous because MAI 4.01 is applicable in contract actions. No authority is cited for that, but it has been held that the use of MAI 4.01 in a contract action is proper. *Gottlieb v. Hyken*, 448 S.W.2d 617 (Mo. 1970). It may be questioned whether 4.01 without modification is required to be given in a contract case, but that issue need not be reached or decided here. It is sufficient to say that in the circumstances of this case, MAI 4.01 required modification for the obvious reason that MAI 4.01 first requires the jury to make a finding for the plaintiff; and, in this case, the jury could not find otherwise. Aside from the conflict with the verdict directing instruction previously discussed, the instruction properly advised the jury on the manner of calculation of the damages to be awarded; and, as previously noted, they were not confused or misled by the instruction. MFA makes some argument with respect to the use of the term, fair market value, in the instruction, contending that the prices in evidence were "contract" prices. It is clear enough that this is a semantic difficulty only. It is true that the evidence concerned prices for a sale on a specific date, but it is a quibble to say that the quoted price of a fungible commodity regularly traded in the market place is not its fair market value. The instruction, as noted, is a far cry from an appropriate and proper instruction; but it does not appear that it created any prejudice to the rights of MFA and, considering all of the evidence and all of the instructions, the jury was not confused or misled.

■ The last claim with respect to error in instructions is that MFA argues that the forms of verdict were improper since they did not provide the jury with a form of verdict in favor of the defendant MFA. Under the admitted facts and all of the evidence, the plaintiff was entitled to recover some amount. It is not error to omit an instruction permitting a verdict for the defendant where, under the pleadings and the evidence, the plaintiff is entitled to a verdict. *Hayden v. Grand River Mutual*

*Telephone Corp.,* 440 S.W.2d 161 (Mo.App. 1969). A verdict form not supported by the evidence should not be given. *Hannibal Sales Co. v. Solter,* 551 S.W.2d 936 (Mo.App. 1977). Other instructions in the case clearly advise the jury that they could find the date of sale on May 6 and thus apply the MFA position to the form of verdict. The blank in the form of verdict made it clear that the jury was to compute the amount due the plaintiff based on the evidence presented; and, reading all the instructions together, the jury could not have been misled or prejudiced by the instruction. The verdict itself is an exact mathematical calculation of the July 13 price of soybeans multiplied by the agreed volume of the beans minus the agreed storage charge and interest computed to August 9.

Rule 84.13(b) provides that "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action." No such material error appears in this record and the judgment is affirmed.

All concur.