Niles DRURY, Plaintiff/Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, et al., Defendant/Respondent.

No. 66156.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 29, 1995.

Daniel J. Cohen, Edwardsville, IL, for plaintiff/appellant.

Nicholas J. Lamb, St. Louis, for defendant/respondent.

SIMON, Judge.

Niles Drury, employee, appeals from a judgment in favor of Missouri Pacific Railroad Company, his employer, in his Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, and his Safety Appliances and Equipment Act (Safety Act), 45 U.S.C. §§ 1–46, claims.

In his eleven points on appeal, employee contends the trial court erred in: (1) denying his motion for directed verdict on his Safety Act claim because the uncontradicted and unrebutted evidence indicated that his injury was due, at least in part, to a failure of two railroad cars to couple automatically upon impact; (2) giving instructions positing his negligence as the "sole cause" of his injury; (3) instructing the jury regarding his duty to mitigate his damages; (4) permitting the introduction of evidence relating to his ownership of "The Batcave" tavern and the income he derived therefrom; (5) permitting employer's counsel to read the deposition testimony of its managing agent, David Barnes; (6) instructing the jury on the issue of contributory negligence because there was no proper evidence introduced at trial which would support such a finding; (7) refusing his tendered instruction which would have advised the jury that he does not assume the risks associated with his employment; (8) permitting employer's counsel to read an unsigned and unsworn interrogatory answer provided by his attorney; (9) permitting the jury to view a large, blowup exhibit indicating his history of alcoholism; (10) refusing his tendered instruction which would have informed the jury that his entitlement to recover under the FELA was not barred by the fact that the litigated injury might be an aggravation of a pre-existing condition; and (11) refusing his tendered instruction which would have informed the jury that under the Safety Act it is irrelevant whether the coupler in question functioned properly or improperly before or after the occasion in question. We reverse and remand.

Employee worked as a switchman for employer. At some time in May or June 1990, he was working at night when he noticed two railroad cars not coupled together. He attempted to couple the two cars by pushing one of the couplers or "drawbars" attached to one of the uncoupled cars. The drawbar was rusty. Unsuccessful, he put his shoulder on the drawbar and pushed, whereupon he slipped and twisted his left ankle. After October 1990, employee no longer worked for employer. On January 10, 1991, he filed an accident report with employer concerning the incident.

Employee filed a two-count petition, alleging in Count I that he was injured while attempting to straighten a drawbar and that employer was negligent pursuant to the FELA in failing to provide him with a reasonably safe place to work and safe tools, appliances, and equipment with which to do his work, thereby causing his injuries and damages. In Count II, employee alleged that employer violated the Safety Act by furnishing employee with a railroad car that would not automatically couple upon impact, causing his injuries and damages. In its answer, employer set forth an affirmative defense to both counts, contending employee's injuries, if any, were either caused or contributed to by his own negligence or other misconduct.

Subsequently, the parties stipulated:

That [employee's] prayer for relief in the form of lost wages and/or loss of earning capacity is limited to such losses as have

occurred, and/or will occur, as a result of [employee's] permanent inability to return to his previous position with the Railroad. [Employee's] proof of damages at trial will not include any evidence pertaining to his ownership of, or income from, Cahokia Sports, Inc./"Batcave." Further, [employee] does not contend, nor will he testify at trial, that he has not undergone any suggested medical care due to lack of financial resources.

Employee filed a motion in limine to exclude testimony, evidence and references to his business entity, a tavern known as the Sports Arena, Inc., d/b/a "The Batcave." The motion was denied. He also filed a motion in limine to exclude any reference to his use of alcohol, and the motion was sustained.

At trial, employee presented the testimony of Larry Gebhard and Daniel Elder, his former co-workers at the railroad. Gebhard testified that the yard where employee was injured was used partly to store obsolete rail cars. On direct, he testified as follows:

Q. [If] you're working with one of these drawbars, is it sometimes necessary for you as a trainman to physically move the drawbar.

A. Yes, it is.

 * * * * * *

Q. Now, if the drawbar is lubricated, how hard is it to move it if it's lubricated.

A. Not very hard at all.

Q. And if the drawbar hasn't been maintained and doesn't have lubrication and it's rusty, what's it like to move.

A. They can become extremely hard to move.

Gebhard further testified that when employee came to work the day of the incident he was not limping but that he was when he was leaving work. Gebhard stated that after that day employee had a harder time getting around. Finally, Gebhard testified that devices used to align drawbars were not readily available.

Elder testified that he observed employee walking normally when he came to work that day and that he was limping when he left.

He testified that employee was injured while switching cars and that the cars are supposed to couple automatically upon impact.

Employee also testified that railroad cars will couple automatically if the drawbars are aligned and working properly. Further, employee testified that he bought his tavern in 1985 and that its profits were $825 in 1988, $380 in 1989, $5,266 in 1990, $710 in 1991, and $11,152 in 1992. On cross-examination, he testified that the tavern was open 14 hours per day every day, that he had one employee, and that the tavern's gross receipts totaled $50,000 in 1991 and $48,422 in 1992. During its evidence, employer offered the testimony of Martin Gruettemeyer, a certified public accountant who did compilation work for employee's tavern. He testified that from August to December 1993 the tavern's gross receipts amounted to $45,726.

Employer also read the following deposition testimony of David Barnes, a supervisor for employer, as questioned by employer's counsel:

Q. Just a few questions, Mr. Barnes. In the conversation you had with Mr. Drury in the Collinsville Holiday Inn in August 1990, am I to understand that he told you that whatever injury he had—whatever injury he had supposedly sustained previously, that he told you it was his own fault.

A. That is correct.

Q. And did you understand, therefore, that one of the reasons he claimed he didn't fill out a personal injury report was because it was his own fault.

A. Yes, sir.

Q. And in that conversation that you had with Mr. Drury in August of 1990, am I to understand that he made no mention whatsoever of any problem with ballast or his foot slipping on ballast.

A. Absolutely none.

Q. Am I also to understand that he made no mention of an ankle injury in that conversation.

A. That is correct, sir.

Q. And the reason for the meeting with Mr. Drury in August of 1990 was because in some period prior to that he

had had increased absenteeism from the workplace; is that correct.

A. Yes, sir.

Q. And as far as you can recall, that period of increased absenteeism would have been earlier than May or June of 1990; is that correct.

A. Yes, sir.

Q. And in the conversation at the Collinsville Holiday Inn, did Mr. Drury ever mention anything that was supposedly wrong with this drawbar other than that he had somehow hurt himself while working with a drawbar.

A. No, sir.

Q. Did he mention rust or stored cars or anything along those lines.

A. No, sir.

Q. To your knowledge, Mr. Barnes, were there rules in effect governing employees such as Mr. Drury in the summer of 1990 regarding obtaining additional assistance to do a job if the employee thought there might be some difficulty or danger associated with it.

A. Yes, sir.

Q. And if Mr. Drury described himself as a footboard yardmaster, would he have had, at the time of his alleged injury, would he have had employees that were his subordinates which he could have requested or even ordered to assist him.

A. Yes, sir.

Subsequently, employee read the following testimony from the same deposition of Mr. Barnes:

Q. Do you recall approximately how many persons attended this meeting.

A. I think there were approximately 12.

Q. Were you the only management official in attendance.

A. No, sir. Art Smith out of recruit management system assisted me throughout most of the meeting. However, he had to catch an airplane at about 4:00 in the afternoon and when Mr. Drury came in, it was only Mr. Drury and myself.

Q. At the time of the conversation that you previously mentioned.

A. Yes, sir.

Q. Do you have a verbatim recollection of that conversation.

A. No, sir.

\* \* \* \* \* \*

Q. As we sit here today, can you tell me the names of any of the other employees who you met with that day regarding their absenteeism.

A. I would have to look at that list again and I could—I could tell you some of them. I can't from memory, no sir.

Following the close of evidence, employee objected to the submission of instructions numbered 6, 8, 9 and 14, which was overruled. These instructions provided:

### No. 6

You must find [employee] contributorily negligent if you believe:

First, [employee] either failed to request the assistance of a co-worker to move the drawbar, or failed to use a pry bar to assist in moving the drawbar, or failed to use a strap to assist in moving the drawbar, or failed to use a cable to assist in moving the drawbar, or attempted to move the drawbar by pushing on it a second time, or failed to assure that he had sound footing prior to attempting to move the drawbar, and

Second, [employee] in any one or more respects submitted in Paragraph First was negligent, and

Third, such negligence of [employee] directly contributed to cause his injury.

### No. 8

Your verdict must be for [employee] if you believe:

First, [employer] used on its line a car which contained a coupler mechanism which would not automatically couple properly upon impact, and

Second, this use resulted in whole or in part, in injury to [employee], unless

you believe [employee] is not entitled to recover by reason of Instruction No. 9.

### No. 9

Your verdict must be for [employer] on [employee's] Safety Appliance Act claim for personal injury as submitted in Instruction No. 8 if you believe [employee's] negligence was the sole cause of his injury.

### No. 14

[Employee], after his injury, was required by law to use reasonable efforts to eliminate or reduce any loss of earnings resulting from his injury by taking advantage of reasonable employment opportunities available to him or using reasonable efforts to obtain suitable employment.

Employee proffered the following not-in-MAI instruction concerning his FELA claim, which the trial court refused:

### No. F

If you decide for [employee] on the question of liability, you may not deny or limit [employee's] right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition or a pre-existing condition which rendered [employee] more susceptible to injury.

Employee also offered the following not-in-MAI instruction relating to his Safety Act claim, which the trial court refused:

### No. G

In determining whether the coupler in question was defective in that it did not automatically couple properly upon impact on the occasion in question, you are not to consider whether the coupler functioned properly before or after said occasion.

At the close of the evidence, employee moved for a directed verdict, which was denied. Both counts were submitted to the jury, and verdicts were returned in favor of employer.

In his first point, employee contends that the trial court erred in denying his motion for a directed verdict on his Safety Act claim. Employee argues that he testified he injured

his ankle while attempting to align a drawbar on a car that failed to couple automatically upon impact and that he was entitled to a directed verdict because his testimony was never rebutted.

■■■ Generally, the party carrying the burden of proof is not entitled to a directed verdict, no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be. *International Minerals & Chemical Corp. v. Avon Products, Inc.*, 889 S.W.2d 111, 119[17] (Mo. App.E.D.1994). In *Brandt v. Pelican*, 856 S.W.2d 658, 664[11] (Mo. banc 1993) (citing *Coleman v. Jackson County*, 349 Mo. 255, 160 S.W.2d 691, 693[2] (Mo.1942)), the Missouri Supreme Court noted an exception to the rule, stating:

> If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.

The court further noted that if a directed verdict is to be based upon oral testimony, it must be based upon the testimony of the party who has the benefit of the burden of proof (usually the defendant) and not upon the testimony of the defendant's other witnesses. *Id.* at 664[12].

Here, none of the exceptions are present. Point denied.

In his second point, employee contends the trial court committed reversible error by submitting instruction number 8, the verdict director on employee's Safety Act claim, and

instruction number 9, a "sole cause" instruction. In six subpoints, employee contends: (1) sole cause is not a defense to a Safety Act claim; (2) sole cause instructions are barred by the Missouri Approved Instructions; (3) the instructions were argumentative in employer's favor because instruction number 9 was the second converse instruction to employee's Safety Act verdict director; (4) the instructions were inconsistent and confusing; (5) instruction number 9 granted the jury a roving commission because it did not set forth specific acts of employee's alleged negligence; and (6) instruction number 9 was not supported by the evidence.

Employee did not raise Subpoints 2, 3 and 5 in his objection or his motion for a new trial. Thus, our review is limited to Subpoints 1, 4 and 6. *See* Rules 70.03 and 78.07.

■ Generally, FELA cases tried in state courts are subject to state procedural rules, but the substantive law is federal. *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 1348[2], 84 L.Ed.2d 303 (1985). The United States Supreme Court held in *Dickerson* that "the propriety of jury instructions concerning the measure of damages in an FELA action is an issue of 'substance' determined by federal law." *Id.* (citation omitted). Similarly, the appropriateness of jury instructions concerning causation in a Safety Act action is an issue of "substance" determined by federal law. Federal courts have found sole cause instructions in Safety Act and FELA cases not to be erroneous. *See Taylor v. Illinois Cent. R. Co.,* 8 F.3d 584, 586[4] (7th Cir. 1993); *Meyers v. Union Pacific R. Co.,* 738 F.2d 328, 331[5] (8th Cir.1984); *Beimert v. Burlington Northern, Inc.,* 726 F.2d 412, 414–15[3, 6] (8th Cir.1984); *see also* Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit 206–207, note 8 (1995). Therefore, it was permissible in the present case to submit to the jury an instruction on sole cause.

■ However, the form of such an instruction is dictated by Missouri procedural rules. In *Holley v. Missouri Pacific R. Co.,* 867 S.W.2d 610, 615[7] (Mo.App.E.D.1993), this court noted that:

Although the United States Supreme Court held in *Dickerson* that the mere fact that an instruction is not found in MAI is not determinative of the federal question of whether an instruction should be given, we do not interpret the holding of *Dickerson* to be that the Defendant is thereby entitled to submit the issue by whatever manner it pleases. *Dickerson* expressly acknowledged that FELA cases adjudicated in state courts are generally subject to state procedural rules. (citing *Dickerson,* 470 U.S. at 411, 105 S.Ct. at 1348).

■ Rule 70.02(b) requires that whenever MAI contains an instruction applicable in a particular case such instruction must be used to the exclusion of any other instruction on the same matter. Furthermore, when an MAI instruction must be altered to fairly submit the issues in a case or where there is no applicable MAI instruction so that a not-in-MAI instruction must be given, such instructions must be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." The primary goal in instructing a jury is to translate complicated legal concepts into simple, clear and accurate laymen's language so that the jury may understand the factual issues of a claim or defense and act properly in deciding the case. *See* Milholland, "Why and How to Instruct a Jury," Missouri Approved Instructions LXXVII–LXXIX (4th ed. 1995).

■ One of the premises of MAI is to submit only the affirmative elements of plaintiff's case and to avoid the duplication and confusion involved in submitting other propositions that are merely inconsistent with the propositions plaintiff must prove. *Hiers v. Lemley,* 834 S.W.2d 729, 734[10] (Mo. banc 1992). Accordingly, MAI permits two fundamental types of converse instructions—the true converse and the affirmative converse. The true converse begins, "Your verdict must be for the defendant unless you believe ..." and the remainder of the instruction is taken from the verdict director. The form book for the language of the converse instruction, other than the introductory phrase, is the verdict director itself. MAI 33.01; *Hiers,* 834 S.W.2d at 734. In contrast, an affirmative

converse presents a hypothetical ultimate issue which, if true, would defeat plaintiff's claim. The affirmative converse begins, "Your verdict must be for the defendant if you believe . . ." and *it requires independent evidence for support. Id.*

██ Here, instruction number 9, which essentially provides that the verdict must be for employer on employee's Safety Act claim as submitted in instruction number 8 if the jury believes employee's negligence was the sole cause of his injury, appears to be an affirmative converse. However, the instruction duplicates the proposition submitted in instruction number 8. Thus, it is merely inconsistent with the propositions employee must prove.

Moreover, MAI 1.03 forbids sole cause instructions in Missouri. Although such an instruction is permissible in a FELA or Safety Act action under *Dickerson,* we find that the policy behind Missouri's prohibition on sole cause instructions is persuasive in this case. The negligence of employee was properly submitted in the causation element of the Safety Act verdict director, the true converse to the Safety Act claim and the contributory negligence instruction. *See* MAI 1.03. The additional sole cause instruction was confusing and misleading.

██ Employer argues that employee was not prejudiced by the sole cause instruction because he failed to make a submissible case on his Safety Act claim. We disagree.

██ The Safety Act, 45 U.S.C. § 2, provides:

It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

This places an absolute duty on railroad companies, a duty not based on negligence. *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 433–34, 70 S.Ct. 226, 229[1], 94 L.Ed. 236 (1949). To establish an employer's liability under the Safety Act, the employee

must prove that the employer violated the act and that this violation caused, in whole or in part, employee's injury. *Id.* Causation is established if employee's injury resulted "in whole or in part" from employer's violation of the Safety Act. *Id.* at 434–35, 70 S.Ct. at 229[3].

Viewing the record in the light most favorable to employee, employee testified that railroad cars will couple automatically if the drawbars are aligned and are working properly. He further testified that he attempted to align the rusty drawbar of an uncoupled car, injuring his ankle. Additionally, Gebhard testified that unlubricated, rusty drawbars are harder to move than lubricated drawbars and devices used to couple cars were not readily available at the yard. Elder testified that drawbars are supposed to couple automatically. We find, therefore, that employee made a submissible case. Instruction number 9 was erroneously submitted, resulting in prejudice to employee.

In light of our disposition of employee's second point, we need only review employee's remaining points alleging errors that are likely to reoccur on retrial.

In his third point, employee alleges the trial court erred in giving instruction number 14 on employee's duty to mitigate his damages.

In *Holley v. Missouri Pacific R. Co.,* 867 S.W.2d 610 (Mo.App.E.D.1993), employee brought a FELA action against his employer, and employer offered an instruction stating that employee, after his injury, was required by law to use reasonable efforts to eliminate or reduce any loss of earnings resulting from his injury by taking advantage of reasonable employment opportunities available to him. *Id.* at 612, 615[8]. The trial court refused to submit this instruction. On appeal by employer, we found no error in the refusal, reasoning that:

Assuming *arguendo* that Defendants were entitled to submit a separate, Not-in-MAI instruction on mitigation of damages, the instruction tendered by Defendants clearly fails to satisfy the well-established requirements for submission of Not-in-MAI instructions. It is purely an abstract

statement of law (footnote omitted) in that it does not require any finding by the jury or inform the jury of how the information set forth in the instruction is to impact any finding they are to make. It provides no guidance with respect to which party bears the burden of proof. It is argumentative in purporting to inform the jury of what is "required by law." Further, to the extent that the instruction states that Plaintiff was required to undertake efforts "to eliminate . . . any loss of earnings," the instruction was not supported by the evidence. Defendants did not introduce any evidence that Plaintiff could have eliminated any loss of earnings. At best, the evidence would have supported a determination that Plaintiff could have reduced or ended his loss of earnings by accepting Defendants' offer to return to work after his surgery. *Id.* at 615–16[8].

■ Here, employer's instruction is very similar to the one tendered in *Holley*. Even if employer introduced evidence that employee could have mitigated his loss of earnings, we find this instruction to be an abstract statement of law because it does not require any finding by the jury or inform the jury of how the information set forth in the instruction is to impact any finding the jury is to make, it provides no guidance with respect to which party bears the burden of proof, and it is argumentative in purporting to inform the jury of what is "required by law."

In his fourth point, employee contends the trial court erred in permitting the introduction of evidence relating to his ownership of "The Batcave" tavern and the income he derived therefrom. Employee argues that the evidence was inadmissible because employer offered no evidence showing that "The Batcave" profits were generated by his personal efforts and the evidence constituted proof of compensation from a collateral source and prejudicial proof of the relative wealth of the parties.

■ As a general rule, the determination of the relevance of proof offered at trial is for the sound discretion of the trial court and is not ordinarily reviewable on appeal. *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 495[24] (Mo.App.

1991). The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other evidence. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 367[7] (Mo. banc 1993). Exclusion of evidence of collateral matters is demanded when the evidence introduces new controversial points and a confusion of issues would result or when there would be unfair surprise or undue prejudice disproportionate to the usefulness of the evidence. *Trejo v. Keller Industries, Inc.*, 829 S.W.2d 593, 596[4] (Mo. App.1992).

■ We find the evidence of employee's ownership of the tavern was relevant evidence concerning his earning capacity; thus, the trial court did not abuse its discretion. *Bissett v. Burlington Northern R. Co.*, 969 F.2d 727, 730[7], 732[10] (8th Cir.1992).

■ Also, on direct examination employee testified that he bought "The Batcave" in 1985. He then stated the tavern's profits from 1988 to 1992. Yet, on appeal, he contends the trial court erred in admitting evidence concerning his ownership of the tavern and the income he derived therefrom. Essentially, employee contends the trial court erred in failing to save employee from himself. Moreover, employee did not object to the admission of this evidence. It is an elementary principle of law that matters complained of on appeal must be preserved for review by objection. *Hord v. Morgan*, 769 S.W.2d 443, 446 (Mo.App.1989).

In his fifth point, employee claims the trial court erred in permitting employer's counsel to read the deposition testimony of its managing agent, David Barnes.

The record indicates that employee did not object at trial to the reading of Barnes' testimony; thus, he failed to preserve the issue for appeal. Additionally, we note that employee read into the record a portion of Barnes' testimony to rebut the portion read by employer.

In his sixth point, employee claims the trial court erred in instructing the jury on the issue of contributory negligence because there was no proper evidence to support such a finding.

Instruction number 6 provides that the jury must find employee contributorily negligent: (1) if he failed to request the assistance of a co-worker to move the drawbar, if he failed to use a pry bar, strap or cable to assist in moving the drawbar, or if he failed to assure that he had sound footing prior to attempting to move the drawbar; (2) if employee in one or more respects submitted was negligent; and (3) such negligence directly contributed to cause his injury.

In a FELA case, the burden of proving contributory negligence is on the employer. *Birchem v. Burlington Northern R. Co.*, 812 F.2d 1047, 1049[1] (8th Cir.1987). Employer is entitled to a contributory negligence instruction if there is any evidence to support the theory. *Id.* However, if employer does not produce evidence of employee's lack of due care, then it is reversible error. *Id.*

Our review of the record indicates there was sufficient evidence for the submission of the contributory negligence instruction.

In his seventh point, employee contends the trial court erred in refusing to give his tendered MAI 34.04, a withdrawal instruction relating to assumption of the risk in FELA cases, which states:

> Plaintiff does not assume the risks of his employment. This matter is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

Employee claims that employer's theory of contributory negligence was actually a charge of assumption of the risk. He argues that his failure to seek help from other co-workers in moving the drawbar and to use tools specifically designed for straightening misaligned drawbars constituted facts supporting an assumption of the risk claim, not a contributory negligence claim. We disagree.

The "Notes on Use" for MAI 34.04 state that the instruction "may only be given if the false issue of assumption of the risk is injected in the case." In light of our finding *supra* that there was proper evidence to support the submission of the contributory negligence instruction, we find that the evidence supported employer's contributory negligence claim and did not inject the false issue of assumption of the risk into the case.

Employee next claims the trial court erred in permitting employer for impeachment purposes to enter into evidence and later argue in closing argument the significance of an answer to one of employer's interrogatory questions. Employee argues the evidence was not an admission by him and was erroneously admitted because the interrogatory answers were neither signed nor sworn to by him.

The interrogatory answer in question was given in response to a question about employee's medical treatment for his injured ankle. The answer provided that employee first received treatment from Dr. Vicki Provaznik in October 1990. In a deposition, employee testified that Provaznik was the first physician to treat his ankle. However, employer discovered in Provaznik's medical record that between June and October 1990 employee had seen Dr. Kenneth Osia 17 times for treatment on his ankle. During cross-examination, employee admitted that he had incorrectly identified Provaznik as the first physician to treat his ankle. Employer used the interrogatory answer to impeach employee's credibility.

The record clearly indicates, and employer does not dispute, that employee's interrogatory answers did not conform to Rule 57.01(a), which provides that each interrogatory served on a party shall be answered fully in writing "under oath" and that the answers "are to be signed by the person making them." The interrogatory answers were not signed or sworn to by employee.

However, employee's attorney signed the interrogatory answers and returned them to employer's counsel. "Admissions of an attorney relevant to the purpose for which he was employed and made while engaged in that employment are admissible in evidence against the employer and the client." *Parr v. Missouri Farmers Ass'n, Inc.*, 567 S.W.2d 724, 727[1] (Mo.App.1978). The interrogatory answer in the present case was clearly an admission as it was inconsistent with the position employee took at trial regarding the identity of the first physician who treated his

ankle. *See Nettie's Flower Garden v. SIS, Inc.*, 869 S.W.2d 226, 229[1] (Mo.App.E.D. 1993).

Employee's failure to follow the guidelines set forth in Rule 57.01(a) would have been grounds for a motion by employer to compel proper interrogatory answers or a motion for sanctions for failing to properly answer the interrogatory questions. Rule 61.01(b). However, employee's failure to follow the rule is not sufficient to constitute trial court error.

In his ninth point, employee claims the trial court erred in denying his motion for a mistrial for permitting employer to show to the jury during its opening statement a blow-up exhibit indicating employee's history of alcoholism.

Prior to trial, employee filed a motion in limine to preclude any reference to his use of alcohol or history of alcoholism, which the trial court granted. Furthermore, the court ruled that each party could only use one exhibit during their opening statements. In employer's opening statement, employer displayed the blowup in question. Employee immediately objected to its use on the basis that employer had already used its one allotted exhibit earlier in its statement. The trial court agreed with employee and barred employer from using the exhibit. The blowup, a patient intake form filled out by employee prior to receiving treatment from Osia, apparently contained a reference to employee's alcoholism. After employer's opening statement, employee moved for a mistrial, arguing that the exhibit contained a prominent reference to employee's alcoholism which prejudiced the jury against him.

 Employer contends it inadvertently failed to delete the alcoholism reference. Thus, such an incident is unlikely to reoccur on retrial. Moreover, employee failed to specifically and timely object to the alcoholism reference. Failure to complain of a statement made to the jury at the time it was made results in a waiver of any right to complain on appeal. *Elfrink v. Burlington Northern R. Co.*, 845 S.W.2d 607, 613[12] (Mo.App.E.D.1992); *Hammond v. R.L. Smith Trucking Co.*, 833 S.W.2d 6, 8[2] (Mo. App.E.D.1992). Also, employee failed to in-

clude the blow-up exhibit in the record on appeal, preventing this court from examining it to determine whether the reference was overt and plainly viewable. The trial court was in a better position to determine how the exhibit was presented and whether jurors likely saw the alcoholism reference. As such, we defer to the trial court's determination of this matter.

 In his final points, employee contends the trial court erred in refusing his tendered instruction F which would have informed the jury that under the FELA it is irrelevant whether the coupler in question functioned properly or improperly before or after the incident in question. Employee further contends the trial court erred in refusing his tendered instruction G which would have informed the jury that in determining whether the coupler was defective and violated the Safety Act it did not need to consider "whether the coupler functioned properly or improperly before or after said occasion."

We find that the instructions were merely abstract statements of law, and the trial court did not err in refusing to submit them. *See Holley v. Missouri Pacific R. Co.*, 867 S.W.2d 610, 615–16[8] (Mo.App.E.D.1993).

Judgment Reversed and Remanded.

AHRENS, P.J., and KAROHL, J., concur.